**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------X
UNITED STATES OF AMERICA            :
                                    :
     -against-                      :    No. 12 Cr. 691 (JFK)
                                    :
DEJVID MIRKOVIC,                    :    **OPINION & ORDER**
                                    :
                    Defendant.      :
------------------------------------X

USDC EDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 03/25/2021

APPEARANCES

FOR DEFENDANT DEJVID MIRKOVIC:
    Pro Se

FOR THE UNITED STATES OF AMERICA:
    J. Matthew Haggans
    U.S. ATTORNEY'S OFFICE FOR THE WESTERN DISTRICT OF NEW YORK

**JOHN F. KEENAN, United States District Judge:**

   Before the Court is a motion by Defendant Dejvid Mirkovic seeking a sentence reduction to time served and his immediate release pursuant to the First Step Act ("the Act"), 18 U.S.C. § 3582(c)(1)(A), commonly known as the compassionate release statute.  The Government opposes Mirkovic's motion as procedurally barred because he did not satisfy the Act's administrative exhaustion requirements before seeking judicial intervention, and substantively meritless because Mirkovic's medical conditions, the circumstances of his incarceration, and the 18 U.S.C. § 3553(a) sentencing factors do not warrant a modification to his term of imprisonment.  For the reasons set forth below, Mirkovic's motion is DENIED.

1

**I. Background**

Unless otherwise noted, the following is taken from the materials the parties submitted, Mirkovic's Presentence Investigation Report, dated July 3, 2013, and the transcripts of Mirkovic's March 13, 2013 plea (ECF No. 157) and August 1, 2013 sentencing (ECF No. 159). In ruling on Mirkovic's request, the Court has considered the arguments advanced in his pro se motion, dated December 3, 2020 (filed under seal), the Government's letter in opposition (ECF No. 272), and Mirkovic's reply, dated March 9, 2021 (filed under seal).

On March 13, 2013, Mirkovic pleaded guilty, pursuant to a plea agreement, to one count of conspiracy to murder an employee of the United States, in violation of 18 U.S.C. § 1117. The charges stemmed from Mirkovic's participation in a shocking scheme to murder a sitting United States District Judge ("the Judge") and an Assistant United States Attorney ("the AUSA"), both of whom served in the Eastern District of New York. From between February 1, 2012, and October 9, 2012, Mirkovic conspired with his business partner, Joseph Romano, to retaliate against the lead prosecutor and judge who had convicted and sentenced Romano to a 180-month term of incarceration for wire and bank fraud. The conspiracy took root when Romano, who was incarcerated at the time, informed a fellow inmate of his desire to murder the Judge and AUSA. Based on this information, law

enforcement set up a sting operation involving an undercover officer who posed as a contract killer.

Pursuant to Romano's directives, Mirkovic traveled from Florida to New York on at least two occasions to meet with people whom he and Romano believed would kill the Judge and AUSA. These so-called "hit men," however, were undercover law enforcement agents. After meeting with Romano at his prison, Mirkovic offered the undercover agent money to murder the Judge and AUSA on behalf of Romano. Mirkovic provided the names of both to the agent and stated that Romano would pay $40,000 for their murders, with a down payment of $20,000. Mirkovic also provided specific requests from Romano regarding the way the Judge and AUSA should be murdered, including Romano's request that both victims' heads be preserved in formaldehyde as souvenirs. Mirkovic told the agent that Romano was willing to pay extra for the souvenirs if the agent could store them until Romano was released from prison.

Between September 22, 2012, and October 2, 2012, Mirkovic delivered a total of $22,000 in cash down payments to the undercover agent. Mirkovic also offered to pay for the undercover agent to travel to Florida after the murders and requested that he assault Mirkovic's wife's ex-husband, who was causing certain problems to Mirkovic. On October 9, 2012, however, Mirkovic was arrested at his home, where law

enforcement recovered the balance due for the murders in the form of $18,000 in cash in Mirkovic's safe.

On November 8, 2012, the Chief Judge of the Eastern District of New York disqualified all United States District Judges of the Eastern District from presiding over the case against Mirkovic and Romano. (ECF No. 12.) Later that day, the Chief Judge of the Second Circuit Court of Appeals designated this Court to preside over the case as a temporary District Judge for the Eastern District of New York. (ECF No. 13.)

Following Mirkovic's March 13, 2013, plea before this Court, on August 1, 2013, Mirkovic appeared for sentencing, during which this Court found a Guidelines offense level of 40, a Criminal History Category of I, and a Guidelines sentencing range of 292 to 365 months' incarceration. (Sent. Tr. at 19:19–20:1.) Mirkovic's counsel requested that he be sentenced to 10 years' incarceration. (Id. at 13:24–14:3.) The Government requested "[a] reasonable and just sentence . . . within or slightly below the applicable sentencing guideline range of 292 to 365 months' incarceration." (Id. at 17:24–18:4.) During sentencing, the Court noted Mirkovic's "excellent" sentencing submission and his "very thoughtful letter." (Id. at 20:9–15.) "However," the Court explained, "the criminal activity here, as everybody acknowledges, is, to use [Mirkovic's counsel's] word, horrific," (id. at 20:16–17), and further explained that "[t]his

4

is the most serious kind of crime that can be contemplated or thought of because it strikes right at the heart and soul of our judicial system and our whole system of justice in the United States," (id. at 19:7-10). Nevertheless, the Court sentenced Mirkovic to a below-Guidelines 288-month term of imprisonment to be followed by five years of supervised release. (Id. at 20:18-25.) To date, Mirkovic has served approximately eight-and-a-half years of his 24-year sentence. He is scheduled for release on April 18, 2033. See Find an Inmate, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Mar. 24, 2021).

On December 28, 2020, the Court received a pro se motion from Mirkovic requesting a reduction in sentence and his immediate compassionate release due to certain confidential assistance Mirkovic had provided to the Federal Bureau of Prisons ("the BOP") as well as the health emergency caused by the COVID-19 pandemic. The Court ordered the Government to respond, and on February 5, 2021, the Government filed a letter (under seal) opposing Mirkovic's request and arguing that no extraordinary and compelling reasons support his release which, in any event, would be inappropriate under the sentencing factors set forth in 18 U.S.C. § 3553(a). (ECF No. 272.) On March 16, 2021, the Court received a letter in reply from Mirkovic in which he reiterated his request for release and argued that he suffered from certain COVID-19 risk factors—

5

namely, hypertension, obesity, and latent tuberculosis—which, he argued, warrant his immediate compassionate release.

## II. Discussion

### A. Legal Standard

18 U.S.C. § 3582(c)(1)(A) allows a court to modify a term of imprisonment "upon motion of the defendant" provided the defendant has exhausted certain administrative requirements. 18 U.S.C. § 3582(c)(1)(A). Under these circumstances, a court may reduce the defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Id. § 3582(c)(1)(A)(i). In doing so, the Court must also consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." Id. § 3582(c)(1)(A). "Application of the § 3553(a) factors requires an assessment of whether the relevant factors 'outweigh the "extraordinary and compelling reasons" warranting compassionate release . . . [and] whether compassionate release would undermine the goals of the original sentence.'" United States v. Daugerdas, --- F. Supp. 3d ---, No. 09 Cr. 581 (WHP), 2020 WL 2097653, at *4 (S.D.N.Y. May 1, 2020) (alterations in original) (quoting United States v. Ebbers, 432 F. Supp. 3d 421, 430-31 (S.D.N.Y. 2020)).

In the Second Circuit, the policy statement issued by the U.S. Sentencing Commission pertaining to compassionate release, section 1B1.13 of the Sentencing Guidelines, "is not 'applicable' to compassionate release motions brought by defendants," and "cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling." United States v. Brooker, 976 F.3d 228, 236 (2d Cir. 2020). Accordingly, as the court in United States v. Harris, No. 15 Cr. 445 (PAE), 2020 WL 5801051 (S.D.N.Y. Sept. 29, 2020), explained:

> when assessing a motion brought directly by an imprisoned person rather than by the BOP, the Court is constrained neither by [§] 1B1.13's enumeration of extraordinary and compelling reasons, nor by its freestanding requirement that the defendant seeking release not pose any danger to the community. Rather, the Court may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." However, even if such reasons are present, the Court must also assure itself that release is consistent with "the factors set forth in section 3553(a) to the extent that they are applicable."

Id. at *2 (footnote and internal citations omitted).

"[P]ro se litigants generally are entitled to a liberal construction of their pleadings, which should be read 'to raise the strongest arguments that they suggest.'" Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)).

7

### B. Analysis

Mirkovic argues that extraordinary and compelling reasons exist to reduce his sentence because he aided the BOP in running "smooth and safe operations," he has amassed a remarkable record of rehabilitation, and the COVID-19 pandemic poses undue health risks to him. The Court disagrees. As discussed below, none of the factors cited by Mirkovic—individually or in combination— give rise to extraordinary and compelling circumstances. Accordingly, even if Mirkovic could demonstrate administrative exhaustion, his sentence cannot be reduced, and the Court need not resolve whether it is procedurally proper. See 18 U.S.C. § 3582(c) (stating "court[s] may not modify a term of imprisonment once it has been imposed" absent extraordinary and compelling circumstances); see also United States v. Lorenzano, No. 03 Cr. 1256 (JFK), 2021 WL 734984, at *2 (S.D.N.Y. Feb. 24, 2021) (denying release); United States v. Castillo, No. 03 Cr. 979 (KMW), 2021 WL 268638, at *2 (S.D.N.Y. Jan. 27, 2021) (same).

### 1. Mirkovic's Assistance and Rehabilitation

Mirkovic first argues that his sentence should be reduced because he provided certain confidential assistance to the BOP in discovering contraband and because he has demonstrated extraordinary rehabilitation since his arrest. The Court disagrees.

8

First, Mirkovic's purported "assistance" to the BOP does not constitute a sufficiently extraordinary or compelling reason to modify his sentence. While commendable if true, Mirkovic's motion is utterly devoid of any support for his assertions regarding the assistance he provided, and the Court will not deem such self-representations to be presumptively true where Mirkovic does not include any letters from the BOP attesting to his claims.

Second, even if Mirkovic's assertions regarding his confidential assistance and significant rehabilitation were true, Mirkovic's circumstances still would not rise to the level of extraordinary and compelling circumstances in which courts have ordered a reduction in a defendant's sentence. For example, in United States v. Panton, No. 89 Cr. 346 (LAP), 2020 WL 4505915, at *1–2, 9 (S.D.N.Y. Aug. 4, 2020), the court found extraordinary and compelling circumstances where the defendant had served 30 years of a life sentence that the Probation Department had viewed as "unduly harsh" prior to sentencing and which was imposed following the defendant's conviction for conspiracy to possess and distribute heroin. Notably, the defendant's offense conduct did not include violence, he had developed several serious health issues that made him more susceptible to COVID-19, and he had a stellar disciplinary record. See id. at *2–3, 7–9. Likewise, in United States v.

9

Millan, No. 91 Cr. 685 (LAP), 2020 WL 1674058, at *8 (S.D.N.Y. Apr. 6, 2020), the defendant was a non-violent offender who had served more than 28 years of a life sentence imposed for his participation in a large-scale heroin distribution operation. Despite having had no realistic hope of release, the defendant conducted himself as a model prisoner, demonstrated exceptional character, and received support for a sentence reduction from the BOP staff at his facility. See id. And, in United States v. Rodriguez, --- F. Supp. 3d ---, No. 00 Cr. 761 (JSR), 2020 WL 5810161, at *1, 4 (S.D.N.Y. Sept. 30, 2020), the court concluded that, after 20 years' imprisonment, a reduction in the defendant's sentence from life to one of 30 years with a lifetime of supervised release was appropriate where the defendant provided "[a]n extraordinary collection of letters—from fellow inmates, family, friends, and, most important, 27 members of the prison staff" that made clear he was "wholly rehabilitated." See also United States v. Marks, 455 F. Supp. 3d 17, 27, 33 (W.D.N.Y. 2020) (noting numerous letters from individuals with no obvious stake in the defendant's request for a reduction in sentence—such as BOP officers and fellow inmates—that attested to the defendant's good works during his incarceration); but see Castillo, 2021 WL 268638, at *5 (finding rehabilitation not sufficiently extraordinary and compelling

10

even where three BOP employees wrote positive letters of recommendation).

Accordingly, while Mirkovic's self-proclaimed efforts at rehabilitation are commendable, they do not constitute sufficiently extraordinary and compelling circumstances to warrant a reduction in his sentence. Cf. Lorenzano, 2021 WL 734984, at *4, 6 (denying request for compassionate release).

### 2. COVID-19

Mirkovic next argues that the deadly pandemic caused by the coronavirus, COVID-19, is an extraordinary and compelling reason for his release. Once again, the Court disagrees.

As a preliminary matter, the Court is sympathetic to the heightened risk certain individuals face from COVID-19. See People at Increased Risk, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html (last visited Mar. 24, 2021); see also United States v. Park, 456 F. Supp. 3d 557, 560 (S.D.N.Y. 2020) ("The nature of prisons—crowded, with shared sleeping spaces and common areas, and often with limited access to medical assistance and hygienic products—put those incarcerated inside a facility with an outbreak at heightened risk.") (collecting sources). And, on at least one occasion, it has ruled that the threat posed by the COVID-19 pandemic to a medically "high-risk" and non-violent individual constitutes

11

"extraordinary and compelling reasons" warranting immediate release. See United States v. Smith, 454 F. Supp. 3d 310, 315 (S.D.N.Y. 2020) (granting release to non-violent 62-year-old who suffered from asthma, high cholesterol, blood clots, a thyroid condition, and suspected multiple myeloma); but see United States v. Seshan, No. 14 Cr. 620 (JFK), 2020 WL 2215458, at *4 (S.D.N.Y. May 6, 2020) (denying release to 47-year-old despite his "end-stage renal failure and hypertension" and the threat of COVID-19 because, inter alia, the defendant had a history of violence and granting the motion would disserve important § 3553(a) sentencing factors).

Here, Mirkovic does not articulate a sufficiently extraordinary or compelling reason why the COVID-19 pandemic warrants his immediate release. According to the Centers for Disease Control and Prevention ("the CDC"), older adults and people of any age who have serious underlying medical conditions may be at higher risk for a severe illness from COVID-19. See People at Increased Risk, Ctrs. for Disease Control & Prevention, supra. Mirkovic's age and relatively minor health issues, however, do not qualify. Mirkovic is 46, significantly younger than the CDC's former high-risk cutoff age of 65. See id. And, while the CDC has listed obesity and heart conditions such as "pulmonary" hypertension (a specific and rare type of high blood pressure affecting the lungs and right side of the

12

heart) as potential risk factors for a severe illness from COVID-19, Mirkovic's medical conditions cannot be characterized as such. "The current COVID-19 pandemic is an unprecedented worldwide catastrophe. But it does not warrant the early release of sentenced inmates in federal prisons convicted of serious, dangerous offenses, like [the defendant], whose medical conditions and risk of contracting the virus cannot be deemed 'extraordinary and compelling.'" United States v. Mood, No. 19 Cr. 113 (VB), 2020 WL 3256333, at *1 (S.D.N.Y. June 16, 2020) (denying release to 53-year-old with diabetes, hypertension, and obesity where "[t]here is no question that [the defendant] has health issues, but his condition is stable and has been effectively managed by routine monitoring and medication"). Further, Mirkovic does not suffer from other health conditions which rise to the level of COVID-19 risk factors looked to by the CDC and courts, such as cancer or immunocompromization. See, e.g., Park, 456 F. Supp. 3d at 563–64 (granting release to 44-year-old with a documented history of respiratory issues, including severe asthma and immune-compromising diseases); Smith, 454 F. Supp. 3d at 315; but see, e.g., United States v. Mason, No. 96 Cr. 126 (JFK), 2021 WL 37576, at *3 (S.D.N.Y. Jan. 5, 2021) (denying release to 52-year-old with obesity and borderline hypertension and diabetes).

### 3. 18 U.S.C. § 3553(a) Factors

Finally, and decisive here, even if Mirkovic's efforts at rehabilitation and the COVID-19 pandemic provided extraordinary and compelling reasons for a sentence reduction, application of the 3553(a) factors cripples Mirkovic's request and outweighs any justification for early release. Here, the factors that weigh in Mirkovic's favor, such as the need to provide necessary medical care, are overshadowed by the combined force of "the nature and circumstances of the offense," "the history and characteristics of the defendant," and the need for the sentence imposed to "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense," "afford adequate deterrence to criminal conduct," and "protect the public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(1), 3553(a)(2). Indeed, Mirkovic has only served eight-and-a-half years of a 24-year sentence which was imposed for offense conduct that is among the most serious and reprehensible the Court has encountered: Mirkovic was a crucial player in a horrific murder-for-hire conspiracy targeting "the heart and soul of our judicial system and our whole system of justice in the United States." (Sent Tr. at 19:7-10.) Granting Mirkovic the relief he seeks would disserve the above important sentencing factors. Accordingly, Mirkovic's motion is denied.

Cf. Lorenzano, 2021 WL 734984, at *6; Castillo, 2021 WL 268638, at *7; Seshan, 2020 WL 2215458, at *4.

### III. Conclusion

For the reasons set forth above, Defendant Dejvid Mirkovic's motion for a reduction in sentence is DENIED.

**SO ORDERED.**

Dated:  New York, New York
        March 25, 2021

*[signature: John F. Keenan]*
John F. Keenan
United States District Judge